```
                    UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
_____
                               )
UNITED STATES OF AMERICA,      )
                               )
          v.                   )      CRIMINAL ACTION
                               )      NO. 22-10037-WGY
JAMES P. MCNULTY               )
                               )
               Defendant,      )
_____)
```

YOUNG, D.J.                                        July 27, 2023

## MEMORANDUM OF DECISION

James P. McNulty ("McNulty") was indicted under 18 U.S.C. § 922(a)(1)(A) for selling firearms without a license.  See Indictment, ECF No. 1.  He moved to dismiss his indictment by placing singular reliance on the Supreme Court's decision in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022).  See Def.'s Mot. Dismiss, ECF No. 30.  The test for determining firearm regulation under Bruen is multi-faceted.  Courts are to begin their analyses by charting out the exact parameters of a defendant's indicted conduct and then determine whether the Second Amendment, under its plain text, covers the defendant's conduct.  See Bruen, 142 S. Ct. 2111, 2129-2130 (2022).  If the Second Amendment does grant protection to the challenged conduct, courts proceed to the next step and assess whether the regulation that allegedly impinges a defendant's Second Amendment right is consistent with the Nation's

historical tradition of firearm regulation.  Id. at 2131.  If it
is, then the regulation survives; if it is not, the regulation
violates the Second Amendment.  At its core, McNulty's motion to
dismiss primarily addresses the latter half of the Bruen
inquiry, and rests on the argument that the government cannot
prove that 18 U.S.C. § 922(a)(1)(A) is consistent with the
Nation's historical tradition of firearm regulation.  McNulty,
however, never clears the initial phase of the Bruen inquiry --
the Second Amendment is not implicated under the facts giving
rise to McNulty's indictment.  Analysis ends there.  Proceeding
to the second step of the Bruen inquiry would at best be
earnest, at worst, impetuous, and in either case, wholly without
merit.  This is especially so when one bears in mind that this
case is, at its base, a challenge to regulations that in
substance limit the sale of firearms at a time when gun violence
is palpable.  Yet this Court's decision is not influenced by the
color of the public interest.  It is based on fidelity to
Supreme Court precedent.

I.   **FACTUAL BACKGROUND**

From January 2021 to April 2021, McNulty offered for sale
and sold at least fifty-five firearms without a license.  See
Indictment at 1.  On February 17, 2022, McNulty was indicted for

dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A).  See generally id.

On December 14, 2022, McNulty filed a motion to dismiss, to which, on January 19, 2023, the government filed a response. See Def.'s Mot. Dismiss, ECF No. 30; see Gov's Response Def.'s Mot. Dismiss, ECF No. 36.

On January 23, 2023, this Court heard argument on McNulty's motion and then entered an order denying the motion.  ECF No. 39.  McNulty later pleaded guilty, ECF No. 77, waiving any reliance on his motion to suppress.  Nevertheless, the Court explains its rationale for the denial of McNulty's motion since the impact of Bruen is a significant jurisprudential concern.

## II.  ANALYSIS

McNulty's argument in his motion to dismiss is simple.  He recounts the recent case of Bruen where the Supreme Court made the test for assessing challenges to firearms regulations under its own past cases more explicit.  In Bruen, the Supreme Court explained that part of this inquiry is an assessment of whether "modern firearm regulations are consistent with the Second Amendment's text and historical understanding."  Bruen, 142 S. Ct. 2111, 2118 (2022).  Against this backdrop, McNulty asserts that the regulations in question here that led to his indictment do not comport with the Nation's historical tradition of firearm

regulation, and consequently, this case must be dismissed.  <u>See</u>
<u>generally</u> Def.'s Mot. Dismiss.  This Court disagrees not
necessarily because McNulty's argument has no merit –- the Court
makes no ruling in that regard –- but because it cannot be held
that the Second Amendment is implicated in this case and
therefore the arguments that flow from <u>Bruen's</u> historical
tradition analysis do not engage.

> **A.   Standard of Review**

When adjudicating a motion to dismiss a criminal case,
courts accept the factual allegations pled in the indictment as
true.  <u>Boyce Motor Lines</u> v. <u>United States</u>, 342 U.S. 337, 343
n.16 (1952).  An indictment that "describes all of the elements
of the charged offense using the words of the relevant criminal
statute" is usually sufficient for the purposes of surviving a
motion to dismiss.  <u>United States</u> v. <u>Wells</u>, 766 F.2d 12, 22 (1st
Cir. 1985).

The burden that the defendant must meet for a court to
grant his motion to dismiss is a demanding one.  <u>United States</u>
v. <u>McPhail</u>, No. 14-10201-DJC, 2015 WL 2226249, at *2 (D. Mass.
May 12, 2015)(Casper, J.).  So as not to encroach on the
fundamental role of the grand jury, courts exercise their
discretion to dismiss indictments with caution.  <u>Unites States</u>
v. <u>Thomas</u>, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting
<u>Whitehouse</u> v. <u>U.S. Dist. Ct.</u>, 53 F.3d 1349, 1360 (1st Cir.

1995)).  For a motion to dismiss in a criminal case to succeed, it must be shown "that, as a matter of law, the prosecution will not be able to prove each of the elements of the charged offense."  United States v. Sidoo, 468 F. Supp. 3d 428, 43 (D. Mass. 2020) (Gorton, J.) (citing United States v. Huet, 665 F.3d 588, 596-97 (3d Cir. 2012)).

**B.   The Challenged Regulations**

The primary federal provision that McNulty challenges is 18 U.S.C. section 922 which forbids anyone "except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms."  18 U.S.C. § 922(a)(1)(A).

The federal licensing scheme under 18 U.S.C. section 922(a)(1)(A) for firearms also incorporates any respective state licensing schemes.  McNulty therefore also challenges the Massachusetts State licensing scheme under Massachusetts General Laws ch. 140 sections 122-123.

**C.   Pre-Bruen Second Amendment Challenge Landscape**

In Bruen, the Supreme Court synopsized the precedential framework that governed Second Amendment challenges to regulations.  This recapitulation is imperative to understanding Bruen and is therefore set out here:

The starting point of this saga is District of Columbia v. Heller, 554 U.S. 570 (2008).  Heller's methodology, in assessing

[5]

challenges to the District of Columbia law that generally prohibited the possession of handguns, coalesced an assessment of constitutional text with historical examinations.  The Supreme Court began by analyzing the normal and ordinary meaning of the Second Amendment's language and concluded that the individual's right to possess and carry weapons in case of confrontation was guaranteed and did not depend on service in the militia.  Id. at 580-600.  The Heller Court then sought to confirm whether its finding was supported by the historical background of the Second Amendment and discovered that it was. Id. at 602.

Following an analysis rooted in both constitutional text and history, the Heller Court concluded that the District of Columbia law on handgun possession did violate the Second Amendment.  Yet the Heller Court did not say this without prefacing it with the following:

> . . . the Second Amendment right is not unlimited. It is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose: For example, concealed weapons prohibitions have been upheld under the Amendment or state analogues. The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Heller, 554 U.S. 570 (2008).

Two years after Heller, the Supreme Court heard a challenge to laws that effectively banned handgun possession at one's home in Chicago by almost all private citizens, rather similar to the laws declared unconstitutional in Heller.  See McDonald v. City of Chicago, Ill., 561 U.S. 742 (2010).  The analysis in McDonald, in large part, centered on the question whether the Due Process Clause of the Fourteenth Amendment incorporated the Second Amendment right illuminated in Heller.  Id. at 750.  That analysis is but tangential to this Court's decision here.  The salient feature of McDonald, for the purpose of this analysis, is McDonald's reaffirmance and reiteration of Heller's precedent.  Moreover, and importantly, the Court in McDonald yet again remarked that the Second Amendment right to carry firearms was not unlimited:

> We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626-627, 128 S.Ct., at 2816-2817. We repeat those assurances here.

McDonald, 561 U.S. 742, (2010).

Following Heller and McDonald, the Courts of Appeals developed a two-step test to assess Second Amendment claims. See Bruen, 142 S. Ct. 2111, 2125 (2022).  Under the first step, the government was burdened with attempting to justify a

challenged regulation by proving that it fell outside the scope
of the Second Amendment as originally understood by reference to
historical evidence.  Id. at 2126.  If the government succeeded
in carrying its burden, then it would be held that the regulated
activity was categorically unprotected.  Id.  If, however,
historical evidence proved inconclusive or indeed contrary to
the proposition that the regulated activity was not
categorically unprotected, a court would proceed to the second
step of this inquiry and assess "how close the law comes to the
core of the Second Amendment right and the severity of the law's
burden on that right."  Id. (internal quotation marks omitted).
If a core Second Amendment right was burdened, courts applied
strict scrutiny and asked whether the government could prove
that the law was tailored to achieve a compelling governmental
interest.  Id.  If historical evidence did not delineate the
scope of the right, then courts applied intermediate scrutiny
and considered whether the government could show that the law
was substantially related to the achievement of an important
governmental interest.  Id. at 2126-2127.

   D.   **Bruen and the Corrected Second Amendment Challenge
        Framework**

   In Bruen, the Petitioners challenged a New York statute
that permitted an individual to carry a firearm outside his home
by means of an unrestricted license to have and carry a pistol

or revolver if they could prove that proper cause existed for doing so.  Bruen, 142 S. Ct. at 2122.  The Supreme Court held that this proper-cause requirement violated the Fourteenth Amendment by preventing citizens from exercising their Second Amendment right to keep and bear arms in public for self-defense.  Id. at 2156.  In the course of this ruling, the Supreme Court clarified Heller and McDonald's framework.

The Supreme Court recounted Heller as a case that subjected Second Amendment claims to analyses undergirded by constitutional text and history.  The Supreme Court declared, against this backdrop, that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  Id. at 2129-2130.  For the government to justify regulating the protected conduct, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation."  Id. at 2126.  And this, for the Supreme Court, was the true test that had been set out in Heller.  The second step that Courts of Appeals had adopted in their analyses on this area -- that of means-end scrutiny -- was rejected as one that had no foundation.  Id. at 2127.

Of note again is that the Supreme Court in Bruen reiterated that the right under the Second Amendment is not unlimited.

[9]

Justice Alito, in his concurrence, explicitly held that <u>Bruen's</u>
holding did not displace laws about who may lawfully possess a
firearm or the requirements that must be met to buy a gun.
<u>Bruen</u>, 142 S. Ct. 2111, 2157 (2022).  Justice Kavanaugh and
Chief Justice Roberts, in their concurrence, recalled the
language in <u>Heller</u> that limited the rights secured by the Second
Amendment.  <u>See</u> <u>Bruen</u>, 142 S. Ct. 2111, 2162 (2022).

With the Supreme Court in <u>Bruen</u> now having decisively
clarified how courts are to assess Second Amendment claims, here
is the formula that this Court, in fidelity to <u>Bruen</u>, follows:
First, the defendant's conduct that seeks to benefit from the
Second Amendment must be determined.  Second, this Court must
analyze whether the plain text of the Second Amendment covers
the defendant's conduct.  If the plain text of the Second
Amendment does cover the defendant's conduct, then the Court
must proceed to the final juncture and decide whether the
government has demonstrated that the challenged regulation is
consistent with the Nation's historical tradition of firearm
regulation.

### E.   McNulty's Challenge to Firearm Regulations Does Not Survive <u>Bruen</u>

This Court begins its analysis by precisely demarcating
McNulty's prosecuted conduct, so that it may later assess
whether such conduct is implicated by the Second Amendment.

[10]

Such demarcation is by no means onerous.  The answer is clear.
McNulty attempted to engage in the commercial sale of firearms
and indeed did make such sales but did so without a license.
This was in violation of the regulations challenged here.  The
conduct in question here, therefore, is that of an individual
engaging in the commercial sale of firearms.

This Court then proceeds to the next inquiry: Does the
plain text of the Second Amendment cover this conduct?  This
Court finds itself unable to escape the conclusion that it does
not and so holds.

Before the Court proceeds to the central thrust of why
McNulty's conduct does not implicate the Second Amendment, a
brief observation on the extent to which the Second Amendment
protects firearm commerce is merited.  It seems plausible that
engaging in commerce in firearms is, to a certain and qualified
extent, protected by the Second Amendment.  The clearest
expression of this is found in Heller, where, in the context of
elucidating regulations that were said to be presumptively
constitutional, the Supreme Court observed that there does exist
a qualified right to the commercial sale of firearms under the
Second Amendment.  Heller, 554 U.S. at 626-627.

The text of the Second Amendment itself also suggests that
the right to "keep" firearms necessarily includes an ability to
purchase, sell, or otherwise transfer firearms in order to keep

oneself properly armed.  See Andrews v. State, 50 Tenn. 165, 178
(1871) ("The right to keep arms, necessarily involves the right
to purchase them, to keep them in a state of efficiency for use,
and to purchase and provide ammunition suitable for such
arms."). Teixeira v. County of Alameda, 873 F.3d 670, 677 (9th
Cir. 2017) (en banc) ("[T]he core Second Amendment right to keep
and bear arms for self-defense wouldn't mean much without the
ability to acquire arms.").  Without the ability to acquire
firearms, or to dispose of them through sale (as one would any
other lawfully-owned property), the right to keep and bear arms
would be hollow.  Illinois Ass'n of Firearms Retailers v. City
of Chicago, 961 F.Supp.2d 928 (N.D. Ill. 2014) (explaining sales
and transfers of firearms were not categorically outside scope
of the Second Amendment when it was enacted).  This Court,
however, does not make a ruling as to whether the Second
Amendment covers the sale of firearms.  As becomes evident
below, it need not.

The main thrust of this Court's reasoning is this: The
Second Amendment's protection of firearm commerce, if any such
protection exists, is qualified.  Indeed, Heller, while standing
in part for the proposition that firearms commerce is protected
by the Second Amendment, also explicates longstanding laws that
are to be considered presumptively constitutional and outside
the scope of Second Amendment protections.  Heller, 554 U.S. at

[12]

626-627.  Laws that impose conditions and qualifications on the commercial sale of firearms fall within this category.  This would include 18 U.S.C. section 922(a)(1)(A) and the Massachusetts licensing scheme.  So, the question whether firearm commerce implicates the Second Amendment is actually immaterial.  What is material and fatal to McNulty's motion is the presumptive constitutionality of regulations seeking to govern firearms –- this presumptive constitutionality means that such regulations, in their effort to govern firearm commerce, and indeed, McNulty's conduct here, do not implicate the Second Amendment.

McNulty preempts the argument that regulations concerning the commercial sale of firearms fall outside the Second Amendment by asserting that <u>Heller</u> does not control here. McNulty posits that the foregoing proposition in <u>Heller</u> was mere dicta and is not entitled to any preclusive effect. Additionally, McNulty proffers that <u>Bruen's</u> new framework has cast further doubt on this proposition by emphasizing the need for historical studies.

McNulty's attempt to discredit <u>Heller</u> in this manner deserves short shrift.  Even were this Court to assume that <u>Heller's</u> discussion of presumptively lawful regulatory measures concerning firearms commerce is dicta, no significant case, precedential or persuasive, has cast doubt on the

[13]

constitutionality of imposing conditions and qualifications on
the commercial sale of arms.  McNulty, however, argues that
Bruen is such a case.  He seems to suggest that short of a
historical study evincing evidence that certain analogous
regulatory mechanisms for firearms commerce were in existence
around the time of the adoption of the Second Amendment, any
regulation of firearms commerce cannot be constitutional.  This
is, at best, an overly and untenably expansive reading of Bruen.
Simply stated, it is incorrect to posit that Bruen has upended
the presumptive constitutionality of measures seeking to
regulate firearms commerce.  In fact, the Bruen Court seemed to
caution against reading its decision as one that alters the
framework regulating firearm commerce.  Bruen 142 S. Ct. at 2157
("Our holding decides nothing about who may lawfully possess a
firearm or the requirements that must be met to buy a gun.")
(Justice Alito, concurring); Bruen 142 S. Ct. at 2162 ("Properly
interpreted, the Second Amendment allows a 'variety' of gun
regulations.") (citing Heller, 554 U.S. at 636, 128 S.Ct. 2783).
As Justice Scalia wrote in his opinion for the Court in Heller,
Justice Alito reiterated in relevant part in the principal
opinion in McDonald, and Justice Kavanaugh and Chief Justice
Roberts echoed yet again in Bruen:

> Like most rights, the right secured by the Second
> Amendment is not unlimited. From Blackstone through
> the 19th-century cases, commentators and courts

[14]

routinely explained that the right was not a right to
keep and carry any weapon whatsoever in any manner
whatsoever and for whatever purpose.... [N]othing in
our opinion should be taken to cast doubt on
longstanding prohibitions on the possession of
firearms by felons and the mentally ill, or laws
forbidding the carrying of firearms in sensitive
places such as schools and government buildings, or
laws imposing conditions and qualifications on the
commercial sale of arms.

New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 213 L.
Ed. 2d 387, 142 S. Ct. 2111, 2162 (2022) (Justice Kavanaugh
with whom Chief Justice Roberts joined, concurring).

It is thus abundantly clear that the historical tradition
analysis championed by Bruen, the final step of its test for
assessing Second Amendment challenges, need not be reached here.
A dutiful application of Supreme Court precedent mandates that
analysis end.

## III. CONCLUSION

For the foregoing reasons, McNulty's motion to dismiss, ECF
No. 30, was denied.

/s/William G. Young

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[1]

---

[1] This is how my predecessor, Peleg Sprague (D. Mass. 1841-
1865), would sign official documents.  Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 45 years.